Joseph A. Friedman
State Bar No. 07468280
Boyd A. Mouse
State Bar No. 24003949
**KANE RUSSELL COLEMAN & LOGAN PC**
3700 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201
Telephone - (214) 777-4200
Telecopier -  (214) 777-4299
Email: ecf@krcl.com

**ATTORNEYS FOR CENTER OPERATING COMPANY, L.P.**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Case No. 09-34269-sgj-11** |
| **BASE HOLDINGS, LLC** | § | **Chapter 11** |
| | § | |
| **Debtor.** | § | |

| | | |
|---|---|---|
| **CENTER OPERATING COMPANY, L.P.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **Adversary No. _____** |
| | § | |
| **BASE HOLDINGS, LLC,** | § | |
| | § | |
| **Defendant.** | § | |

## CENTER OPERATING COMPANY, L.P. 'S
## COMPLAINT FOR DECLARATORY JUDGMENT

TO THE HONORABLE STACEY G. JERNIGAN,
UNITED STATES BANKRUPTCY JUDGE:

Center Operating Company, L.P. ("Center") files this its Complaint for Declaratory Judgment and respectfully shows the Court as follows:

---

## I.

## PARTIES

1. Center is a limited partnership organized and existing under the laws of the State of Texas.

2. Base Holdings, LLC ("Base" or "Debtor") is a limited liability company organized and existing under the laws of the State of Texas. Debtor my be served with process by serving its registered agent, Aranza Star, Inc., 8008 Cedar Springs Road, Suite, 301, Dallas, Texas 75235, Attention Mr. Gilbert Aranza.

## II.

## JURISDICTION AND VENUE

3. This court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

4. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.

## PROCEDURAL BACKGROUND

5. On July 6, 2009 (the "Petition Date"), Debtor filed its voluntary petition for relief under Chapter 11 of the United states Bankruptcy Code (the "Bankruptcy Code"), thereby initiating the Bankruptcy Case and creating its bankruptcy estate (the "Estate").

6. Debtor continues to operate its business and to manage the Estate as a debtor-in-possession. No committee, trustee, or examiner has been appointed to date.

## IV.

## MOTION TO DISMISS

7. On July 20, 2009, Center filed a Motion to Dismiss Chapter 11 Case or to Convert to Chapter 7 Pursuant to 11 U.S.C. § 1112 (b)(1) (the "Motion to Dismiss")[*Docket No. 26*]. Such Motion is currently set for hearing on September 15, 2009 and the parties are conducting discovery regarding the Motion to Dismiss.

8. Center files this Complaint subject to and without waiver of its pending Motion to Dismiss.

## V.

## FACTUAL ALLEGATIONS

9. Center is the landlord to Debtor pursuant to a Lease Agreement dated June 2, 2008 (the "Lease").[1] The leased premises (the "Premises") are located at portions of the American Airlines Center in Dallas, Texas (the "AAC"). Debtor operates a Chili's Bar & Grill restaurant at the Premises (the "Restaurant").

10. The AAC serves as a multi-purpose entertainment and sports center near downtown Dallas and holds numerous events each year, including several concerts and the home games for the Dallas Stars NHL team and the Dallas Mavericks NBA team.

---

[1] A true and correct copy of the Lease is attached hereto as **Exhibit "1"** and incorporated herein.

11. Article 1.5(a) of the Lease provides that Base Rental (as defined therein) shall begin accruing on the "Chili's Opening Date," which is defined as the earlier of (i) the date that the Chili's Bar and Grill to be located in the Premises opens to the public for restaurant sales and service in the ordinary course of its business or (ii) October 1, 2008, except that such date shall be extended day-for-day that the opening contemplated by clause (i) is delayed for reasons beyond the reasonable control of Debtor.

12. In November 2008, Debtor opened the interior of the Restaurant at the Premises to the public for sales and service in the ordinary course of business. On or about December 6, 2008, Debtor completed the opening of the exterior patio portion of the Restaurant at the Premises.

13. Despite the foregoing, Debtor has never paid Center any Base Rental owing under the Lease. Debtor has also not paid Center for other amounts owing under the Lease, including but not limited to approximately $20,000 in additional expenses which Center had advanced in connection with construction of the Premises and approximately $33,000 in employee parking and utility costs.

14. Article 15.1.1 of the Lease provides that an event of default will occur under the Lease if Debtor fails to make any payment due and owing under the Lease after written notice and a ten day opportunity to cure.

15. By letter from Center to Debtor dated May 13, 2009, Center advised Debtor that it had failed to pay, among other things, Base Rental under the Lease in the amount of $157,666.27 for the months of October 2008 through May 2008.[2]

16. By e-mail from Debtor to Center dated May 13, 2009, Debtor's president communicated, among other things, that "I cannot continue to operate the restaurant . . . . I have no problem with you and the Brinker folks working together to find a fair solution."[3]

17. Despite demand, Debtor has failed to pay any Base Rental or other amounts owing under the Lease.

18. By letter from Center to Debtor and Debtor's lenders dated May 29, 2009, Center gave notice to Debtor's lenders of Debtor's defaults under the Lease, as required by certain Non-Disturbance and Attornment Agreements by and among Center, Debtor, and Debtor's lenders.[4]

19. By letter from Debtor to Center dated June 4, 2009, Debtor communicated, among other things, that Debtor "cannot continue to operate the Chili's nor can it pay amounts it may owe to [Center] or others at this time."

20. Despite written notice, Debtor's lenders failed to cure Debtor's defaults under the Lease.

21. By letter dated June 25, 2009, Center gave Debtor, and Debtor's lenders, written notice to vacate the Premises on or before 5:00 p.m. on Monday June 29, 2009 pursuant to Texas

---

[2] A true and correct copy of this letter is attached hereto as **Exhibit "2"** and incorporated herein by reference.
[3] A true and correct copy of this e-mail is attached hereto as **Exhibit "3"** and incorporated herein by reference.
[4] A true and correct copy of this letter is attached hereto as **Exhibit "4"** and incorporated herein by reference.

Property Code § 24.005 (the "Notice to Vacate").[5] Pursuant to that same letter, Center also provided Debtor and Debtor's lenders with notice of Center's statutory preference lien on the property of Debtor in the Premises for rent that is due and/or that is to become due pursuant to Texas Property Code Chapter 54 and demanded that Debtor refrain from removing any such property from the Premises until the parties reach an agreement regarding the disposition of such property.

22. By proposed letter agreement dated June 25, 2009, Center offered to extend the June 29, 2009 date in the Notice of Vacate by which Center had requested Tenant to vacate the Premises to and including Monday, July 6, 2009 at 5:00 p.m. in exchange for Debtor's agreement not to remove its property from the Premises.[6] As indicated in the proposed letter agreement, Center made this offer in order to afford the parties additional time to effectuate a peaceful and orderly turnover of the Premises and disposition of Debtor's property in the Premises – and hopefully avoid having to resort to the litigation process.

23. However, Debtor chose not to execute the letter agreement and the parties' subsequent efforts to reach an amicable resolution failed.

24. On July 2, 2009, Center instituted eviction proceedings in the Justice Court of Dallas County, Texas, Precinct 1 Place 1. On the eve of eviction, Debtor filed bankruptcy to take advantage of the automatic stay.

25. Center and Debtor dispute whether Base Rental began accruing under Section 1.5(a) of the Lease on October 1, 2008 or the date that Debtor opened for business in November

---

[5] A true and correct copy of this letter is attached hereto as **Exhibit "5"** and incorporated herein by reference.
[6] A true and correct copy of the proposed letter agreement is attached hereto as **Exhibit "6"** and incorporated herein by reference.

2008. By letter dated June 4, 2009, Debtor took the position that the opening of the Restaurant was delayed for reasons beyond the reasonable control of Debtor. Center disputes this assertion.

26. It was Debtor, not Center, that was responsible for constructing the Restaurant pursuant to the terms of the Lease. It was Debtor, not Center, that was responsible for obtaining the necessary permits to construct and open the Restaurant pursuant to the Lease.

27. Debtor's Restaurant did not open on October 1, 2008 due to Debtor's own delays and/or reasons that were within Debtor's reasonable control.

28. Since nearly the beginning of the project to construct and open the Restaurant, the Debtor has been severely under capitalized. From preparation of drawings to actual construction Debtor's capital constraints caused delays. For example, Debtor's lack of funding delayed delivery of key components such as the Vista Wall[7] and a 400 amp electrical breaker, which in turn delayed the completion of construction and opening. In another instance, contractors went unpaid, and in at least one instance, an electrical contractor stopped work because he was not paid.

29. On several occasions, Debtor requested six figure "bridge loans" from Center in order to fund construction.

30. In April 2009, Debtor advised a vendor, Electric, Inc., that "[the Debtor] simply cannot pay the balance due Electric, Inc., or others, for this project due to the fact the project was significantly over budget and business since opening the restaurant has been extremely disappointing." Electric, Inc. filed a mechanic's and materialman's lien in the amount of

---

[7] A Vista Wall is a shared fabricated framing structure made to match the ACC's existing exterior and permit installation of windows.

$171,729.50 against Center's interest in the ACC.

31. Debtor's failure to timely obtain funding for the construction of the Restaurant and other delays caused by Debtor and/or matters that were within Debtor's reasonable control had nothing to do with any conduct of Center or any of Center's obligations. Nonetheless, Debtor has asserted that the delay in opening the Restaurant was due to Center's acts or omissions. Center denies this assertion. Alternatively, any delay, if any, caused by any acts or omissions of Center (which Center denies) were, at best, concurrent with the delays caused by Debtor's own acts or omissions and therefore do not serve to extend the Chili's Opening Date under Article 1.5(a) of the Lease.

32. Center is aware, based on pleadings filed by Debtor's counsel, that Debtor intends to assert various claims against Center in an attempt to distract the Court from the underlying fact that Debtor has never been able to execute its business plan and operate a successful Restaurant. Debtor has asserted that it intends to seek recovery from Center for its entire investment in the Restaurant as a consequence of Center's alleged breach of the Lease. *See Debtor's Schedule B, Question No. 21* [*Docket No. 30*]. Center categorically denies the allegations that have been made by Debtor.

33. Any consequential or punitive damages for which Debtor has threatened to sue Center are barred by the Lease.

34. Article 15.5 of the Lease provides, in relevant part, as follows:

> 15.5 **LIQUIDATION OF DAMAGES**. NEITHER OF THE PARTIES SHALL BE LIABLE FOR ANY PUNITIVE DAMAGES OR ANY CONSEQUENTIAL DAMAGES OF THE OTHER PARTY AS A RESULT OF ANY BREACH OF THIS LEASE . . . .

(emphasis in original)

35. As a result of Article 15.5, Debtor is not entitled to any windfall damage recovery even if its claim that delays in opening are attributable to Center, which Center denies.

## VI.

## DECLARATORY JUDGMENT

36. Center repeats and re-alleges each of the foregoing allegations above as if fully set forth at length herein.

37. An actual controversy within the Court's jurisdiction exists between Center and Debtor regarding their rights, status, and legal relations regarding the Lease.

38. Pursuant to Texas Civil Practice & Remedies Code § 37.001 et seq., 28 U.S.C. § 2201 et seq., and/or other applicable law, Center requests the Court to declare the parties' rights, status, and legal relations under the Lease and enter a declaratory judgment in favor of Center, among other things, as follows:

(a) that the "Chili's Opening Date" under Article 1.5(a) of the Lease for purposes of the accrual and calculation of Base Rental was October 1, 2008;

(b) that Center has not materially breached the Lease; and

(c) that Article 15.5 of the Lease bars Debtor's claims for punitive or consequential damages against Center.

39. Center also requests the Court to declare any further necessary or proper relief

regarding the parties' rights, status, and legal relations under the Lease. Center requests the Court to award Center its reasonable and necessary costs and attorneys' fees.

## VII.

## CONDITIONS PRECEDENT

40. All conditions precedent to the recovery or relief sought herein have been satisfied.

WHEREFORE, Center respectfully requests the following:

(a) A declaratory judgment as requested herein;

(b) Reasonable and necessary attorneys' fees through trial and all subsequent appeals;

(c) Costs of court;

(d) All writs and processes necessary to effectuate the relief granted; and

(e) Such other and further relief to which Center may be justly entitled.

Dated:  August 7, 2009

Respectfully submitted,

**KANE RUSSELL COLEMAN & LOGAN PC**

By: */s/ Joseph A. Friedman*
    Joseph A. Friedman
    State Bar No. 07468280
    Boyd A. Mouse
    State Bar No. 24003949
3700 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201
Telephone - (214) 777-4200
Telecopier - (214) 777-4299
Email: ecf@krcl.com

**ATTORNEYS FOR CENTER OPERATING COMPANY, L.P.**